UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RICHARD HOEGEMANN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:16-cv-1460 (VAB) |
| | : | |
| DONATO PALMA, ET AL., | : | |
| Defendants. | : | |

**<u>INITIAL REVIEW ORDER</u>**

Plaintiff, Richard Hoegemann, is incarcerated at the Corrigan-Radgowski Correctional

Institution.  He brings this Complaint against Defendants, East Haven Police Officer Donato

Palma and Connecticut Parole Officers Jennifer Desena, James Long, Frank Mirto, Randy

Lagana, Michael Cardona, Kate Fortuna and Sheila Thompson.  ECF No. 1.  He has also filed a

motion to appoint counsel.  ECF No. 3.  For the reasons set forth below, the Complaint will be

dismissed in part and the motion to appoint counsel is **DENIED** without prejudice to renewal.

**I.     STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against

governmental actors and "dismiss . . . any portion of [a] complaint . . . [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  Rule 8 of the

Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement

of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint that includes only

"labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked

assertions devoid of further factual enhancement," does not meet the facial plausibility standard.

*Id.* (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557

(2007)).  Although courts still have an obligation to interpret "a *pro se* complaint liberally," the

complaint must include sufficient factual allegations to meet the standard of facial plausibility.

*See Harris v. Mills*, 572 F.3d 66, 72-73 (2d Cir. 2009) ("Even after *Twombly*, though, we remain

obligated to construe a pro se complaint liberally. . . . We conclude, nonetheless, that the

amended complaint fails to state [a claim] . . . even under liberal standards of review for *pro se*

pleadings.")

## II.     FACTUAL ALLEGATIONS

In November 2014, Mr. Hoegemann was allegedly serving a term of parole from his

Connecticut criminal sentence.  On November 26, 2014, Parole Officer Gregory Denote

allegedly removed an electronic monitoring bracelet from Mr. Hoegemann's wrist because Mr.

Hoegemann had exhibited good behavior.   Compl. ¶¶ 1, 150, ECF No. 1.

### A.     December 3, 2014 Incident

On December 3, 2014, Mr. Hoegemann allegedly went to the New Britain parole office

to return the equipment associated with the monitoring bracelet.  Compl. ¶ 1.  At the office, Mr.

Hoegemann allegedly engaged in a conversation with Parole Officer Desena.  *Id.* ¶ 3.  Although

Officer Denote had allegedly determined that Mr. Hoegemann no longer needed to be monitored using an electronic bracelet, Officer Desena allegedly instructed Mr. Hoegemann to be home at 7:00 p.m. that day to be fitted with a new electronic bracelet. *Id.* ¶¶ 5-6. Mr. Hoegemann allegedly informed Officer Desena that he had a court-ordered counseling session with a therapist in Hamden and his son's mother from 5:45 p.m. to 7:00 p.m. that evening. *Id.* ¶ 7.

Later that day, Officers Desena and Long allegedly contacted Mr. Hoegemann and instructed him to be at his home at 8:00 p.m. that evening. Compl. ¶ 8. Mr. Hoegemann allegedly attended his counseling session that evening and stopped at a gas station on his way home. *Id.* ¶ 16. He alleges that he arrived at his home at 7:50 p.m. *Id.* ¶ 17. Officer Long allegedly arrived at Mr. Hoegemann's home at 8:40 p.m. and applied the monitoring bracelet to his ankle at 8:50 p.m. *Id.* ¶¶ 18-19.

Immediately after Officer Long allegedly finished applying the monitoring bracelet to Mr. Hoegemann's ankle, Mr. Hoegemann alleges that he secured his residence and was preparing to leave for work with one of his employees. Compl. ¶ 21. He alleges that, before he was able to leave for work, he received a call from Officer Palma, who allegedly identified himself as an East Haven police officer and asked Mr. Hoegemann what he had been doing that evening and where he had been. *Id.* ¶ 21-23. Mr. Hoegemann allegedly informed Officer Palma that he had been at a court-ordered counseling session from 5:45 p.m. to 7:00 p.m. and that he then returned home and was, at the time of the conversation, in the front yard of his residence with Parole Officer Long and getting ready to leave for work. *Id.* ¶ 24. Eventually, Officer Long allegedly also spoke to Officer Palma on the phone and allegedly confirmed Mr. Hoegemann's explanation of his whereabouts that evening before hanging up the phone. *Id.* ¶¶ 30-35.

By the time Officer Long allegedly hung up the phone following the call from Officer Palma to Mr. Hoegemann, it was allegedly around 9:20 p.m.  Compl. ¶ 37.  Mr. Hoegemann alleges that he wanted to leave for work at that time, but Officer Long allegedly indicated that Mr. Hoegemann could not leave yet because Officer Long had to ask him a few more questions from Officer Palma.  *Id.* ¶¶ 36, 39.  Officer Long then allegedly asked Mr. Hoegemann whether he had been in East Haven at 8:00 p.m.  *Id.* ¶ 40.

Officer Palma allegedly called Mr. Hoegemann again at around 9:30 p.m. to speak to Officer Long.  Compl. ¶ 44.  Officer Palma allegedly told Officer Long that Officer Desena had given authorization to Officer Long to conduct a strip search of Mr. Hoegemann.  *Id.* ¶¶ 44-46.  Officer Long allegedly conducted this strip search in the front yard of Mr. Hoegemann's residence, in full view of his neighbor's residences and of Mr. Hoegemann's employee.  *Id.* ¶ 47.  Officer Long allegedly also searched Mr. Hoegemann's car at Officer Palma's request.  *Id.* ¶¶ 50-51.  After the completion of the searches, Officer Long allegedly informed Mr. Hoegemann that he was free to leave.  *Id.* ¶¶ 52-54.

Around 10:00 p.m. that evening, Mr. Hoegemann alleges that Officer Desena called him and informed him that she had had a long conversation with Officer Palma.  Compl. ¶ 55.  She allegedly informed Ms. Hoegemann that she had authorized the strip search and that Mr. Hoegemann could be searched anywhere at any time and that he should stop complaining.  *Id.* ¶¶ 57, 59.

### B.    Alleged Parole Violation and Detention

On December 5, 2014, Officer Desena allegedly called Mr. Hoegemann around 9:00 a.m.  Compl. ¶ 60.  She allegedly inquired about where he was and what car he was driving.  *Id.*  Mr.

Hoegemann alleges that he informed her that he was at work and still driving the same car as before. *Id.* ¶ 61.

Officer Desena allegedly informed Mr. Hoegemann that he was not permitted to visit with his son and that all further visitation with his son was terminated until further notice. Compl. ¶ 63.  When Mr. Hoegemann protested, Officer Desena allegedly threatened to find him in violation of his parole conditions.  *Id.* ¶¶ 64-67.

Later that day, Officer Desena allegedly called Mr. Hoegemman and instructed him to report to the Waterbury Parole Office at 3:00 p.m. that afternoon.  Compl. ¶ 76-77.  Mr. Hogemann allegedly arrived early for his appointment, around 2:30 p.m.  *Id.* ¶ 83.  Officer Desena and Officer Mirto allegedly informed Mr. Hoegemann that an individual had reported an alleged assault that occurred on December 2, 2014, which Officer Palma had reported to Officer Desena.  *Id.* ¶¶ 84-85.  Officers Mirto, Desena, Long, Fortuna, and Thompson allegedly took Mr. Hogemann into custody at around 2:45 p.m., based on an allegation that Mr. Hoegemann had violated the law.  *Id.* ¶¶ 84-86, 89.  Mr. Hoegemann was allegedly detailed at the New Haven County Correctional Center.  *Id.* ¶ 95.

### C.      Alleged Violation Hearing and Arrest Warrant

On December 9, 2014, Mr. Hoegemann allegedly received a notice of a parole violation. Compl. ¶ 95.  Mr. Hoegemann alleges that he refused to sign the notice because he thought the allegations were false.  Id. ¶ 96.

On December 22, 2014, Parole Officer Lagana allegedly went to Mr. Hoegemann's cell and informed him that a preliminary hearing regarding the alleged parole violation would take place that day.  Compl. ¶¶ 97-98.  Mr. Hoegemann alleges that he never received a notice of the

hearing nor any documentation regarding the alleged parole violations.  *Id.* ¶ 99.  Officer Lagana allegedly informed Mr. Hoegemann that he was not entitled to notice of the hearing or documentation of the violations.   *Id.* ¶ 100.

At the hearing, Mr. Hoegemann alleges that he was not provided with any written documentation related to the hearing or the finding of probable cause with regards to the alleged parole violation.  Compl. ¶ 102.  Mr. Hoegemann alleges that he was not given the right to "confront adverse information being used to detain [him]."  *Id.*  At the conclusion of the hearing, officers allegedly transported Mr. Hoegemann to Cheshire Correctional Institution ("Cheshire"). *Id.* ¶ 104.

On February 6, 2015, Officer Lagana allegedly visited Mr. Hoegemann at Cheshire. Compl. ¶ 108.  Mr. Hoegemann alleges that he provided Officer Lagana with documents related to the alleged December 3, 2014 incident and Mr. Hoegemann's allegation that Officer Palma and Officer Desena "conspired with each other and altered dates from an alleged incident from Dec. 3rd, 2014 to Dec. 2nd, 2014, to falsely detain Plaintiff on a parole violation."  Id. ¶ 109. Officer Lagana allegedly reviewed these documents.  *Id.* ¶ 110.  Officer Lagana allegedly then informed Mr. Hoegemann that a final revocation hearing was scheduled to take place on February 19, 2015 and that violations of two conditions of parole were alleged: (1) "obey all laws and report any arrest" and (2) "statutory release."  *Id.* ¶¶ 111-12.

Also on February 6, 2015, Mr. Hoegemann alleges that he received a letter from the Board of Pardon and Parole, indicating that the final revocation hearing would occur on February 19, 2015.  Compl. ¶ 114.  Mr. Hoegemann alleges that this notice did not indicate which conditions of parole he had allegedly violated.  *Id.*

### 1.    Arrest Warrant

On or around February 11, 2015, Officer Palma allegedly served Mr. Hoegemann with a arrest warrant for the assault that had allegedly occurred on December 2, 2014.  Compl. ¶¶ 115-16.  The arrest warrant affidavit allegedly included information about an assault that allegedly occurred at Robinson Aviation in East Haven, Connecticut on December 2, 2014.  *Id.* ¶ 118.

Mr. Hoegemann claims that the alleged assault actually occurred on December 3, 2014 and not on December 2, 2014.  Compl. ¶ 119.  He alleges that Officer Palma conspired with other defendants to intentionally change the date of the assault in the arrest warrant affidavit to December 2, 2014 because they knew Mr. Hoegemann could not have committed the assault on December 3, 2014.  *Id.* ¶¶ 119-21.

### 2.    Final Revocation Hearing

On February 19, 2015, Mr. Hoegemann alleges that he appeared before Parole Board Members Richards and Zaccagnin and Officer Lagana for a final revocation hearing.  Compl. ¶ 122.  The Board Members and Officer Lagana allegedly informed Mr. Hoegemann that the new criminal charge would need to be dismissed in order to show that there was no violation of the conditions of his parole and to reinstate his parole status and allow his release.  *Id.* ¶ 123.  Mr. Hoegemann alleges that the hearing was continued pending the disposition of the criminal assault charges.  *Id.* ¶ 124.

Mr. Hoegemann alleges that he subsequently learned that Nazia Rahman and Glen Evans allegedly made false statements to Officer Palma at the East Haven Police Department on December 3, 2014.  Compl. ¶ 128.  This allegedly false police report claimed that Mr. Hoegemann was involved in an altercation at Robinson Aviation at approximately 7:30 p.m. on

December 3, 2014.  *Id.* ¶ 131.  Rahman and Evans allegedly also filed a separate complaint with the Hamden Police Department on December 3, 2014 indicating that on that day, they were in Hamden from 6:00 p.m. through 10:30 p.m.  *Id.* ¶ 132.

On March 17, 2015, Mr. Hoegemann allegedly prepared an affidavit in support of a criminal complaint against Rahman and Evans for their alleged false statements.  Compl. ¶ 128. Mr. Hoegemann's attorney allegedly submitted the complaint to the East Haven Police Department.  *Id.* ¶ 129.  Officer Palma allegedly investigated Mr. Hoegemann's claim that Rahman and Evans made false statements about him.  *Id.* ¶¶ 136-38.  Officer Palma allegedly concluded that Rahman and Evans had not made a false complaint.  *Id.* ¶ 138.

On June 16, 2015, the charges for which Mr. Hoegemann was arrested on February 11, 2015, were allegedly dismissed because of a lack of evidence and probable cause.  Compl. ¶ 135.

On June 18, 2015, Mr. Hoegemann allegedly appeared with his attorney at a final revocation hearing before Officer Cardona and three other Parole Board Members.  Compl. ¶¶ 140-41.  At this time, Officer Cardona allegedly charged Mr. Hoegemann with a new, third alleged violation, for "violating the electronic monitoring program."  *Id.* ¶ 146.  Officer Cardona allegedly indicated that Officer Desena had reported that Mr. Hoegemann had violated the electronic monitoring bracelet curfew on December 1, 2014.  *Id.* ¶ 146.  Mr. Hoegemann, however, allegedly maintained that he had already turned in the electronic bracelet on November 26, 2014 because Officer Denote had removed the electronic bracelet for compliance and good behavior on that date.  *Id.* ¶ 147.   Officer Cardona was allegedly unable to produce any evidence of the alleged electronic monitoring violation occurring on December 1, 2014.  *Id.* ¶ 149.

8

### III.    DISCUSSION

### A.    Claims under Section 1981 and 1985

Mr. Hogemann brings claims under 42 U.S.C. §§ 1981 ("Section 1981") and 1985 ("Section 1985").  Compl. ¶ 1.

#### 1.    Section 1981

Section 1981 provides that all persons "shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind."  42 U.S.C. § 1981(a).  To state a claim under Section 1981, Mr. Hoegemann must allege that "(1) [he] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette  Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

Mr. Hoegemann's Complaint does not allege that he is a member of a racial minority or that he was subjected to discrimination because of his race in connection with any of the activities enumerated in Section 1981.  Instead, he alleges only that various parole officers and police officers mistreated him in various ways in connection with the investigation of an alleged assault and parole violation.  Thus, his Section 1981 claim fails as a matter of law and is dismissed under 28 U.S.C. § 1915A(b)(1).

#### 2.    Section 1985

The first two subsections of 42 U.S.C. § 1985 are clearly not relevant to this action.  The

first subsection prohibits conspiracies to prevent "any officer of the United States" from carrying

out his or her duties.  42 U.S.C. § 1985(1).  The second subsection prohibits conspiracies to

"deter, by force, intimidation, or threat, any party or witness in any court of the United States

from attending such court, or from testifying to any matter pending therein."  42 U.S.C. §

1985(2).  Mr. Hoegemann does not allege that he is a federal official, so he cannot state a claim

against Defendants under Section 1985(1) for a conspiracy to interfere with the duties of a

federal official.  Mr. Hoegemann's allegations also are not related to the participation of

witnesses in judicial proceedings, thus he cannot state a claim against Defendants under Section

1985(2).

In order to state a claim under the only remaining subsection of Section 1985, subsection

three, plaintiff must allege: (1) the defendants did "conspire"; (2) "for the purpose of depriving,

either directly or indirectly, any person or class of persons of the equal protection of the laws";

(3) that a conspirator did an overt act "in furtherance" of the conspiracy; and (4) an injury to his

"person or property" or deprivation of a right or privilege."  *Griffin v. Breckenridge*, 403 U.S. 88,

102-03 (1971); *see also Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir. 1976)

("A legally sufficient [Section 1985(3)] complaint must [also] aver a conspiracy between two or

more persons intended to deprive any person or class of persons of the equal protection of the

laws or of equal privileges and immunities under the law and an act by one of the conspirators in

furtherance of the conspiracy which injured another person or deprived him of exercising any

right or privilege of a citizen of the United States.").  To state a claim under Section 1985(3), Mr.

Hoegemann must also "show some class-based, invidiously discriminatory animus behind the

conspirator's actions."  *Powell v. Kopman*, 511 F. Supp. 700, 704 (S.D.N.Y. 1981) (citing

*Griffin*, 403 U.S. at 102-03).  The Supreme Court has held that Section 1985(3) should not be construed as a "general federal tort law," and that it does not "apply to all tortious, conspiratorial interferences with the rights of others," but only to conspiracies involving an "intent to deprive of equal protection," which requires "some racial, or perhaps otherwise class-based invidiously discriminatory animus."  *Griffin*, 403 U.S. at 101-02; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) ("Our precedents establish that in order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show. . . that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action." (internal quotation marks omitted)).

Although Mr. Hoegemann alleges that the defendants worked together to violate his rights, these allegations are conclusory.  "It is not sufficient to allege that the private and state defendants merely acted in concert or with a common goal.  There must be allegations that the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding."  *Chance v. Cundy*, No. 3-03-cv-40 (JCH), 2004 U.S. Dist. LEXIS 12191, at *25 (D. Conn. June 25, 2004).  In addition, there are no allegations that the actions of any Defendant were taken because of Mr. Hoegemann' race or on the basis of other class-based discriminatory animus, which is required to make out a claim under Section 1985(3).  See *Powell*, 511 F. Supp. at 704.  Thus, Mr. Hoegemann fails to state a claim cognizable under section 1985(3).  The Section 1985 claim is therefore dismissed under 28 U.S.C. § 1915A(b)(1).

**B.      18 U.S.C. §§ 241 and 242**

Mr. Hoegemann also brings claims under 18 U.S.C. §§ 241 ("Section 241") and 242 ("Section 242").  Compl. ¶ 1.  These statutes are criminal statutes.  *See Powell*, 511 F. Supp. at

11

704 ("Plaintiff also seeks relief under 18 U.S.C. s 242 which is the criminal analogue to s 1983.").

"It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not . . . by private complaints." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir.1972). The Second Circuit has held that there is no private right of action under Section 242. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir.1994) ("The district court dismissed Robinson's claims under [Section 242 and 18 U.S.C. § 1385]. Both of these are criminal statutes that do not provide private causes of action."). The Second Circuit has also recognized that there is no private right of action under Section 241. *See Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order) ("To the extent that [plaintiffs] assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241-242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action."); *see also Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994) (refusing to infer a private right of action from a "bare criminal statute") (internal citations omitted). Because there is no private right of action under 18 U.S.C. §§ 241 or 242, these claims are also dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

### C.     Section 1983 Claims Against All Defendants in Official Capacities

Mr. Hoegemann also brings claims under 42 U.S.C. § 1983 ("Section 1983") against all Defendants in their official capacities. Compl. ¶ 1. Mr. Hoegemann alleges that Defendants Desena, Long, Mirto, Lagana, Cardona, Fortuna and Thompson are Connecticut state employees employed by the Connecticut Board of Pardons and Paroles. *Id.* at 3-5. For monetary relief, Mr.

Hoegemann's Complaint requests both punitive and compensatory damages.  *Id.* at 35.

### 1.  State Officials

To the extent that Mr. Hoegemann seeks monetary damages from Defendants Desena, Long, Mirto, Lagana, Cardona, Fortuna and Thompson in their official capacities, the claims are barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.  This bar remains in effect when State officials are sued for damages in their official capacity." (internal citations omitted)); *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe, on the basis of such slender 'evidence,' that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("Using its authority under section 5 of the fourteenth amendment, Congress may abrogate the eleventh amendment in the absence of a waiver by the states, but the civil rights statute 42 U.S.C. § 1983 does not override the eleventh amendment." (internal citations omitted)).  All claims for monetary damages against Defendants Desena, Long, Mirto, Lagana, Cardona, Fortuna and Thompson in their official capacities are, therefore, barred by the Eleventh Amendment and are now dismissed under 28 U.S.C. § 1915A(b)(2).

### 2.  Local Official: *Monell* Claim

The Court also construes the Complaint as asserting Section 1983 claims against Officer Palma in his official capacity.  Officer Palma is allegedly a municipal employee, of the East Hartford Police Department.

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), the Supreme Court set forth

the test for municipal liability. *See Monell*, 436 U.S. at 691. To establish municipal liability for the allegedly unconstitutional actions of a municipal employee, the plaintiff must "plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal citations omitted). A municipality cannot be held liable under 42 U.S.C. § 1983 solely for the acts of its employees. *See Monell*, 436 U.S. at 694-95 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Instead, the plaintiff must demonstrate "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) ("In short, to establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." (internal quotation marks omitted)).

Any claim against a municipal official or employee in his official capacity is considered a claim against the municipality. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks omitted)); *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("A claim asserted against an individual in his official capacity, on the other hand, is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks omitted)).

14

Mr. Hoegemann's allegations as to Officer Palma's conduct do not draw any link between Officer Palma's alleged acts and any alleged municipal custom, practice, or policy that allegedly resulted in the deprivation of Mr. Hoegemann's constitutional rights.  If a complaint "does not allege facts sufficient to show that the violation of [plaintiff's] constitutional rights resulted from a municipal custom or policy," it fails to state a claim under *Monell*.  *Costello v. City of Burlington*, 632 F.3d 41, 49 (2d Cir. 2011) (approving dismissal of *Monell* claim) "Courts have recognized four ways for plaintiffs to demonstrate a 'policy or custom': (1) 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers'[]; (2) conduct ordered by a municipal official with policymaking authority[]; (3) actions taken 'pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels'[]; or (4) a 'failure to train' municipal employees that 'amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact[.]'" *Walker v. City of N.Y.*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *2 (S.D.N.Y. Mar. 18, 2014).  If a complaint alleges only "a single incident," "especially if it involved only actors below the policy-making level," it likely "does not suffice to show a municipal policy" that could result in municipal liability under *Monell*.  *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998).

In support of his *Monell* claim, Mr. Hoegemann's Complaint alleges that Officer Palma participated in or requested the search of Mr. Hoegemann's car and his person, the issuing of an arrest warrant for him on assault charges, and the investigation into the alleged false statements that led to Mr. Hoegemann's assault charges.  As alleged in the Complaint, all of Officer Palma's alleged conduct was connected to a single investigation of an allegation that Mr. Hoegemann had

participated in an alleged assault that occurred on either December 2 or December 3, 2014, and the resulting consequences for Mr. Hoegemann's status as a parolee, rather than any kind of East Haven municipal policy.  *See Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *see also DeCarlo*, 141 F.3d at 61.

Because Mr. Hoegemann has not alleged facts suggesting that Officer Palma engaged in a widespread pattern or practice of directing others to conduct unreasonable searches or subjecting him or other individuals at other times to arrest on false or unsupported charges, he fails to state a claim for monetary damages against Officer Palma in his official capacity.  *See Klos v. Bligh*, No. 13-CV-5449 (SJF) (ARL), 2014 WL 3778993, at *6 (E.D.N.Y. July 31, 2014) (dismissing complaint that failed to "allege any conduct attributable to a municipal custom, practice or policy which resulted in a deprivation of plaintiff's constitutional rights").  All official capacity claims for monetary damages against Officer Palma under Section 1983 are therefore dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### D.    Section 1983 Claims Against All Defendants in Individual Capacities

Mr. Hoegemann also brings claims under Section 1983 against all Defendants in their individual capacities, alleging that the Defendants violated his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.  Compl. ¶ 1.  For the reasons set forth below, the First, Fifth, Sixth and Eighth Amendment claims are dismissed, and Mr. Hoegemann's claims under the Fourth, and Fourteenth Amendments may proceed.

1.      **Dismissed Claims**

a.      **First Amendment**

Mr. Hoegemann brings a Section 1983 claim alleging a violation of the First Amendment.  Compl. ¶ 1.  The Court construes this claim as an allegation that Officer Desena violated Mr. Hoegemann's First Amendment right of association when she allegedly intentionally deprived him of the opportunity to have visitation with his son beginning on December 5, 2014.  *Id.* ¶ 63.  There is, however, no First Amendment right to association that protects a parolee's right to have visitation with his or her minor child.

While the Second Circuit has recognized that "the intentional or malicious deprivation of visitation to a prisoner, even on one occasion, could rise to the level of constitutional violation," they have not made any similar finding as to parolees.  *Mills v. Fischer*, 497 Fed. App'x 114, 116 (2d Cir. 2012) (summary order) (discussing case where incarcerated plaintiff alleged deprivation of right to a visit with his minor son at prison facility).  Furthermore, while the Second Circuit recognized that the possibility of a constitutional violation could arise from the malicious deprivation of visitation to an inmate, it did not find that there was, specifically, a First Amendment right to such visitation.  *Id.* ("Having reviewed the case *de novo*, we first conclude that the district court properly dismissed plaintiffs' First Amendment claims. Even assuming that inmates and their families have a right to visitation protected by the First Amendment, the amended complaint does not state a plausible violation of that right." (internal citations

omitted)).[1]  Because there is no precedent that supports a claim for a violation of the First Amendment when a parolee is denied access to visitation with his or her minor child, Mr. Hoegemann's First Amendment claim against Officer Desena is dismissed for failure to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b)(1).

### b.       Fifth Amendment

Mr. Hoegemann's Complaint also fails to state a claim under the Fifth Amendment.  The Fifth Amendment Due Process Clause applies only to the federal government, and not to state or municipal governments.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law."); *Poe v. Ullman*, 367 U.S. 497, 540 (1961) (explaining that prohibitions "against the deprivation of life, liberty or property without due process of law" set forth in Fourteenth Amendment are applicable to state government and same prohibitions in Fifth Amendment are applicable to "the Federal Government"); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009) (holding that any due process claim "against the City is properly brought under the Fourteenth Amendment, not the Fifth Amendment"); *Mitchell v. Home*, 377 F. Supp. 2d 361, 372-73 (S.D.N.Y. 2005) ("The Fifth Amendment's Due Process Clause protects citizens against only federal government actors, not State officials.  Any due process rights plaintiff enjoys as against state government officials . . . arise solely from the

---

[1] When assuming, without deciding, for the sake of argument that there could be a First Amendment right to visitation with a minor child, the Second Circuit cited only *Overton v. Bazzeta*, 539 U.S. 126 (2003), which also did not recognize such a First Amendment right. Instead, in *Overton*, the Supreme Court noted only that though "the Constitution protects certain kinds of highly personal relationships" and that "outside the prison context there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family" a case concerning the visitation rights of an incarcerated petitioner "is not an appropriate case for further elaboration of those matters" because "freedom of association is among the rights least compatible with incarceration." *Overton*, 539 U.S. at 131.

Fourteenth Amendment due process clause." (internal citations omitted)).

Mr. Hoegemann has not alleged that any federal official violated his Fifth Amendment due process rights. Instead, all of his allegations are against state or municipal officials. Thus, Mr. Hoegemann's due process claims may only be brought under the Fourteenth Amendment, not the Fifth Amendment. *See Dusenbery*, 534 U.S. at 167 (explaining that Fifth Amendment does not apply to State officials); *Ambrose*, 623 F. Supp. 2d at 466-67 (stating that Fifth Amendment does not apply to city officials). Accordingly, the Fifth Amendment claim against the Defendants is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1).

### c.    Sixth Amendment

Mr. Hoegemann contends that the defendants violated his Sixth Amendment rights.   The Sixth Amendment provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. Amend. VI. On its face, the Sixth Amendment is only applicable to criminal prosecutions. U.S. Const. Amend. VI ("In all criminal prosecutions . . .").

Parole revocation hearings are not considered criminal prosecutions. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1971) ("We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. Parole arises after the end of the criminal

prosecution . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."); *United States v. Carlton*, 442 F.3d 802, 807 (2d Cir. 2006) ("It is settled law that the 'full panoply of rights' due a defendant in a criminal prosecution does not apply to revocation hearings for parole, for probation, or for supervised release, all of which are virtually indistinguishable for purposes of due process analysis."); *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006) ("[T]he Confrontation Clause of the Sixth Amendment does not apply to supervised-release revocation hearings."); *Watts v. Pataki*, 9:08-CV-92, 2009 WL 1765016, at *3 (N.D.N.Y. June 22, 2009) (dismissing Sixth Amendment claims because "the Sixth Amendment applies to criminal prosecutions, and a parole hearing is not part of a criminal prosecution"). All of Mr. Hoegemann's allegations against the Defendant relate to his parole revocation hearings, which are not covered by Sixth Amendment protections. Thus, to the extent that Mr. Hoegemann brings claims under the Sixth Amendment, those claims are dismissed in their entirety. *See* 28 U.S.C. § 1915A(b)(1).

### d.    Eighth Amendment

Mr. Hoegemann alleges that the defendants violated his Eighth Amendment rights, but does not further elaborate on this claim. The Eighth Amendment provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. Mr. Hoegemann alleges only that Defendants acted improperly in investigating his alleged parole violations and the allegedly false police report against him regarding a purported assault occurring on either December 2 or December 3, 2014. There are no facts to support a violation of any Eighth Amendment rights. His Complaint does not even

allege that he was ultimately penalized for the alleged parole violation following the continued final violation hearing on June 18, 2015. Thus, any claims under the Eighth Amendment are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 2. Surviving Claims

#### a. Fourteenth Amendment

Mr. Hoegemann claims that the defendants violated his Fourteenth Amendment due process rights. Compl. ¶ 1. The Court construes Mr. Hoegemann's Fourteenth Amendment due process claim as being asserted in connection with his parole revocation proceedings.

At the preliminary parole revocation hearing that allegedly occurred on December 22, 2014, Mr. Hoegemann alleges that Officer Lagana did not provide him with notice of the hearing, evidence in support of the allege parole violations or an opportunity to confront his accuser. Compl. ¶¶ 97-104. At the continued final revocation hearing held on June 18, 2015, Officer Cardona allegedly introduced an entirely new third violation of parole charge in addition to two other charges Mr. Hoegemann was allegedly previously informed of. *Id.* ¶¶ 140-46. Mr. Hoegemann alleges that he did not receive written notice of this claimed violation prior to the June 18, 2015 hearing. *Id.* ¶ 146.

In *Morrissey v. Brewer*, 408 U.S. 471 (1971), the United States Supreme Court held that the revocation of parole implicates the Due Process Clause of the Fourteenth Amendment and that certain "minimum requirements of due process" must be met in connection with a parole revocation hearing. *Morrissey*, 408 U.S. at 489. These minimum due process requirements include: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and

documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Id.*; *see also Torres v. Berbary*, 340 F.3d 63, 69 (2d Cir. 2003) (listing minimum due process requirements necessary "to justify the further punishment generated by parole revocation" and citing *Morrissey*).

Mr. Hoegemann's Complaint includes allegations that Officer Lagana and Officer Cardona failed to provide him with notice of the preliminary parole revocation hearing, failed to disclose the evidence against him, and failed to give him an opportunity to confront or cross-examine the adverse witnesses against him, among other allegations. All of these are among the minimal due process requirements that must be provided during parole revocation hearings. *See Morrissey*, 408 U.S. at 489. The Court therefore concludes that Mr. Hoegemann has stated plausible due process claims under the Fourteenth Amendment against Defendants Officer Lagana and Officer Cardona in connection with the parole revocation hearings held in December 2014 and June 2015. These Fourteenth Amendment claims will proceed.

### b.    Fourth Amendment

Mr. Hoegemann alleges that Officer Palma and Officer Desena authorized the unreasonable strip search of himself and an unreasonable search of his vehicle by Officer Long. Compl. ¶¶ 44-51. He alleges that the strip search conducted in the front yard of his home violated his privacy rights. Mr. Hoegemann further alleges that Officers Mirto, Desena, Long, Fortuna and Thompson participated in the alleged false arrest of Mr. Hoegemann on December

5, 2014 on charges that he had violated the terms of his parole and that Officer Palma falsely arrested Mr. Hoegemann on assault charges on February 11, 2015.

### i.      Alleged Unreasonable Search and Seizure

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. Amend. IV.  "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Massey*, 461 F.3d 177, 178 (2d Cir. 2006) (internal quotation marks omitted).  In conducting this balancing test, "[c]ourts must examine the totality of the circumstances surrounding the search, which includes the Plaintiff's status as a parolee." *Rivera v. Madan*, No. 10-CIV-4136 (PGG), 2013 WL 4860116, at *4 (S.D.N.Y. Sept. 12, 2013); *see also Samson v. California*, 547 U.S. 843, 852 (2006) ("The extent and reach of these conditions [parolees are subject to] clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone.").  Because the Fourth Amendment balancing test requires a court to weigh the intrusion on an individual's privacy against the degree to which the intrusion is needed to promote "legitimate governmental interests," *see Massey*, 461 F.3d at 178, the Second Circuit has recognized that it is necessary to assess the state's "search regulations for parolees as they have been interpreted by state corrections officials and state courts" to determine whether a search of a parolee violated the Fourteenth Amendment.  *United States v. Grimes*, 225 F.3d 254, 258-59 (2d Cir. 2000).

The Connecticut Supreme Court has found, in *State v. Smith*, 540 A.2d 679 (1988), that "[t]he standard required to justify the search here by a probation officer while properly less

stringent than probable cause, we determine, is that which may be found in the emerging and now rather stabilized concept of 'reasonable suspicion,' that is used in other contexts in and about the criminal law." *State v. Smith*, 540 A.2d 679, 691-92 (1988) (internal quotation marks omitted).[2]  The "reasonable suspicion standard requires no more than that the authority acting," such as a probation officer, "be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief that a condition of probation has been or is being violated."[3] *Id.* at 691-92 (internal quotation marks omitted).

The Court cannot say, at this early stage of the case, that Mr. Hoegemann's allegations are insufficient to state a claim for unreasonable search and seizure under the Fourth Amendment against Officer Palma and Officer Desena.  Thus, his Fourth Amendment unreasonable search and seizure claim may proceed against Officer Palma and Officer Desena.

### ii.  Alleged False Arrest

Arrests supported by an officer's belief that there is probable cause are permitted under the Fourth Amendment.  *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable.").  Mr. Hoegemann alleges that Officers Mirto, Desena,

---

[2] The Second Circuit has noted that *State v. Smith* may be the only exception to the "nearly universal consensus that the criminal status of the probationer cannot, viewed on its own, be sufficient to support a determination that 'reasonable suspicion' exists," though the Second Circuit also noted that the *State v. Smith* plaintiff had indicated to his probation officer that he intended to continue using illegal drugs, such that probation officer had additional basis for reasonable suspicion besides mere fact of plaintiff's probationer status.  *United States v. Lifshitz*, 369 F.3d 173, 188 n. 8 (2d Cir. 2004)

[3] While *State v. Smith* discussed a probationer rather than a parolee, the Connecticut Supreme Court recognized similarities between probationers and parolees with respect to Fourth Amendment rights.  *Smith*, 540 A.2d at 691-92. ("As with parolees, it may be crucial to the success of a probation program for a probation officer to have access to some information that a probationer may be unwilling to divulge and so a probation officer needs to be able to act in a manner that could not be tolerated if done by a policeman or other agent of the state with respect to an ordinary citizen under the fourth amendment." (internal quotation marks omitted)).

Long, Fortuna and Thompson participated in the allegedly unjustified arrest of Mr. Hoegemann

on December 5, 2014 on charges that he had violated the terms of his parole and that Officer

Palma was unjustified in presenting an arrest warrant for Mr. Hoegemann on assault charges on

February 11, 2015.  Taking all of Mr. Hoegemann's allegations as true, as required at the motion

to dismiss stage, *Iqbal*, 556 U.S. at 678, Mr. Hoegemann has stated a claim for false arrest under

the Fourth Amendment.  The Fourth Amendment false arrest claims will proceed against

Defendants Officers Mirto, Desena, Long, Fortuna, Thompson and Palma.

     **E.**     **Motion to Appoint Counsel**

     The Second Circuit repeatedly has cautioned the district courts against the routine

appointment of counsel. *See, e.g.*, *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997)

(describing past Second Circuit cases that "caution[] against a[] . . . Pavlovian appointment of

counsel whenever an indigent litigant seeks to ring the appointment bell").  The Second Circuit

also has made clear that before an appointment is even considered, the indigent person must

demonstrate that he is unable to obtain counsel.  *See Saviano v. Local 32B-32J*, 75 F. App'x 58,

59 (2d Cir. 2003) (summary order) (finding no abuse of discretion where district court denied

plaintiff's motion to appoint counsel "in light of [plaintiff's] failure to describe any efforts he

undertook to retain counsel, or to demonstrate that he could not present his case without the

assistance of counsel"); *see also Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173 (2d Cir. 1989)

("[T]he indigent must be unable to obtain counsel before appointment will even be considered."

(internal quotation marks omitted)).

     Mr. Hoegemann's motion to appoint counsel indicates that he has contacted three

attorneys, each of whom have declined to represent him.  *See* Motion at 4-5, ECF No. 3.  His

motion does not indicate, however, that he has attempted to contact the Inmates' Legal

Assistance Program, the organization created to provide legal assistance to Connecticut inmates.

The Court therefore concludes that Plaintiff's attempts to find counsel are insufficient to

demonstrate to the Court that plaintiff cannot obtain legal assistance on his own. The possibility

that Plaintiff may be able to secure legal assistance independently through the Inmates' Legal

Assistance Program precludes appointment of counsel by the Court at this time.

**ORDERS**

In is hereby ordered that:

(1)     The claims brought under 42 U.S.C. §§ 1981 and 1985, 18 U.S.C. §§ 241 and

242, the First Amendment, the Fifth Amendment, the Sixth Amendment, the Section 1983 claims

against Officer Palma in his official capacity are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The official capacity claims for money damages against Mirto, Desena, Long, Fortuna,

Thompson, Lagana and Cardona are **DISMISSED** under 28 U.S.C. § 1915A(b)(2).  Plaintiff's

motion to appoint counsel, ECF No. 3, is **DENIED** without prejudice.

(2)     The following claims will proceed against the defendants in their individual

capacities: the Fourteenth Amendment due process claims against Officers Lagana and Cardona

in connection with the parole revocation hearings held in December 2014 and June 2015, the

Fourth Amendment false arrest and unreasonable search and seizure claims against Officers

Mirto, Desena, Long, Fortuna, Thompson and Palma and the Fourth Amendment privacy claim

in connection with the search against Desena, Long and Palma.

**(3)     Within twenty-one (21) days of this Order**, the Clerk shall a mail waiver of

service of process request packet to East Haven Police Officer Donato Palma in his individual

26

capacity at East Haven Police Department, 471 N. High Street, East Haven, CT 06512 and shall mail a waiver of service of process request packet to each of the following defendants: Connecticut Parole Officer Jennifer Desena, Connecticut Parole Officer James Long, Connecticut Parole Officer Frank Mirto, Connecticut Parole Officer Randy Lagana, Connecticut Parole Officer Michael Cardona, Connecticut Parole Officer Kate Fortuna and Connecticut Parole Officer Sheila Thompson, at the Waterbury Parole Office, 55 West Main Street, Suite 520, Waterbury, CT 06702.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request.  If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)	Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)	Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

(6)	All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

SO ORDERED at Bridgeport, Connecticut, this 2nd day of February, 2017.


   /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge