**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

<table>
<tr><td>

RICHARD HOEGEMANN,
    *Plaintiff,*

    v.

DONATO PALMA, JENNIFER DESENA,
JAMES LONG, & FRANK MIRTO,
    *Defendants.*

</td><td>

No. 3:16-cv-1460 (VAB)

</td></tr>
</table>

**RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

Richard Hoegemann ("Plaintiff") brought this action under 42 U.S.C. § 1983 *in forma pauperis* alleging various civil rights violations committed by Donato Palma, a Town of East Haven police officer, and several parole officers employed by the Connecticut Board of Pardons and Parole, Jennifer Desena, James Long, and Frank Mirto ("State Defendants") (collectively "Defendants") in their individual capacities.

Officer Palma and the State Defendants have separately moved for summary judgment.

For the following reasons, both motions for summary judgment are **GRANTED.**

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **Factual Background[1]**

Richard Hoegemann is a registered sex offender with two prior convictions. State Defendants' Statement of Material Facts Not in Dispute, ECF No. 58-2 ¶ 1 (Nov. 1, 2019) ("State Defs.' SMF").

As of October 25, 2019, Frank Mirto served as the Deputy Director of the Parole and Community Services Division. *Id.* ¶ 39. Before that date, from 2012 until the times relevant to

---

[1] Facts are undisputed unless explicitly noted as disputed. Throughout, certain facts are emphasized as "undisputed" for clarity.

this case, Mr. Mirto served as Parole Manager of the Special Management Unit, which closely monitors and supervises convicted offenders who have exhibited problem sexual behavior and have stipulations for evaluation and treatment for such behavior. *Id.* Mr. Mirto served as a Parole Officer or Parole Manager for fifteen years before serving as Deputy Director. *Id.* James Long has been a Parole Officer for approximately fifteen years. *Id.* ¶ 11. Jennifer Desena is also a PO. *Id.*

On November 20, 2013, Mr. Hoegemann was assigned to Ms. Desena's caseload. *Id.* ¶ 3 (Nov. 1, 2019) ("State Defs.' SMF"). As part of his earlier guilty plea to sexual assault,[2] Mr. Hoegemann had to serve twelve-and-a-half years of special parole. *Id.* ¶ 2.

On January 8, 2014, Mr. Hoegemann violated various conditions of his Special Parole, including a new criminal arrest and charges, so he was remanded to the custody of Connecticut's Department of Corrections ("DOC"). *Id.* ¶ 4.

On May 29, 2014, Mr. Hoegemann received a new criminal sentence of less than a year. *Id.* ¶ 5.

On August 8, 2014, Mr. Hoegemann was reinstated to Special Parole and again assigned to Ms. Desena. *Id.* ¶ 6. Ms. Desena met with Mr. Hoegemann prior to his release to Special Parole, and Mr. Hoegemann signed his conditions of parole, which included a stipulation to GPS monitoring and a consent to search condition. *Id.* ¶ 7. The consent to search condition, applicable to all Connecticut parolees, stated: "I will submit to a search of my person, possessions, vehicle, residence, business, or other area under my control at any time, announced or unannounced, with or without cause, by parole or its agents to verify my compliance with the conditions of my

---

[2] Mr. Hoegemann had another prior conviction for burglary in the second degree. State Defs.' SMF ¶¶ 1, 2.

parole." *Id.* ¶ 8 (citing Ex. B: Statement of Understanding and Agreement – Conditions of Parole, ECF No. 58-4 at 13 ("Parole Conditions Agreement")).

Subsequently, Ms. Desena took a leave of absence from work due to a family matter, and in her absence, another parole officer inadvertently authorized removal of Mr. Hoegemann's GPS monitoring. *Id.* ¶ 9.

December 3, 2014 Incident

On December 3, 2014, Ms. Desena contacted Mr. Hoegemann and directed him to be home at around 8:00 p.m. for re-installation of an ankle GPS monitoring device. *Id.* ¶ 10. Ms. Desena asked James Long to perform this duty, and he agreed. *Id.* ¶ 12.

Around 8:07 p.m., the East Haven Police Department received a 911 call. Palma's Local Rule 56(a)(1) Statement, ECF No. 59-2 ¶ 1 (Nov. 1, 2019) ("Palma's SMF"). A male caller reported having been assaulted by Richard Hoegemann at Robinson Aviation. *Id.* Officer Donato Palma, the investigating officer, submitted the eventual warrant for Mr. Hoegemann's arrest. *Id.* ¶ 2. As part of his investigation, Officer Palma spoke with Mr. Hoegemann by telephone between 9:00 p.m. and 10:00 p.m. *Id.* ¶ 3. These calls were recorded by the East Haven Police Department. *Id.*

At approximately 9:00 p.m., or shortly thereafter, Mr. Long arrived at Mr. Hoegemann's residence in Newington. State Defs.' SMF ¶ 13.

At approximately 9:22 p.m., Officer Palma first called Mr. Hoegemann. *Id.* ¶ 4. After a brief exchange, Mr. Hoegemann handed his phone to Mr. Long, who then had a conversation with Officer Palma. State Defs.' SMF ¶ 14. Mr. Long explained to Officer Palma that he did not know what time Mr. Hoegemann arrived home, but when Mr. Long had arrived, Mr. Hoegemann was out front with his vehicle, a silver Chrysler 300. *Id.* ¶ 15. At no point during this first

conversation did Officer Palma inform Mr. Long that he had received authorization to have Mr. Hoegemann strip searched, nor did Officer Palma request that Mr. Long search Mr. Hoegemann's vehicle. Palma SMF ¶¶ 5, 6. During this first call, Mr. Hoegemann indicated that he did not leave counseling until 7:20 p.m. *Id.* ¶ 7.

Also during this first call, Officer Palma never stated that he was aware of Mr. Hoegemann's parole status or that he could have him "sent back to jail where he belongs," nor did Mr. Hoegemann state that he was "going to file a complaint against Palma for threatening him." *Id.* ¶¶ 9, 10. Mr. Hoegemann never filed a complaint against Officer Palma. *Id.* ¶ 13.

After this call, Officer Palma called the Waterbury Parole Office around 9:40 p.m., but no one answered. *Id.* ¶ 14. Then, also at approximately 9:40 p.m., Officer Palma called Mr. Hoegemann again, and spoke with both him and Mr. Long. *Id.* ¶ 15. Mr. Long communicated that Mr. Hoegemann was supposed to get out of a counseling session at 7:00 p.m. and meet Mr. Long at 8:00 p.m. so that Mr. Long could install a GPS bracelet on Mr. Hoegemann, but Mr. Long had arrived late. State Defs.' SMF ¶ 16. As a result, Mr. Long could not confirm Mr. Hoegemann's location at the time of the crime. Palma SMF ¶ 42. Officer Palma did not inform Mr. Long that he had received authorization to have Mr. Hoegemann strip searched, nor did Officer Palma request that Mr. Long search Mr. Hoegemann's vehicle. *Id.* ¶¶ 19, 20 (undisputed). Nevertheless, Mr. Hoegemann maintains and testified at his deposition that during the second call, Officer Palma ordered Mr. Long to strip search him. *Id.* ¶ 32.[3]

Between the first and second conversations and before placing the GPS device, Mr. Long conducted a pat-down search and may have reached under Mr. Hoegemann's jacket and into his waistband to ensure he had no weapons. State Defs.' SMF ¶ 19. The pat-down was consistent

---

[3] Officer Palma cites to page 93 of Plaintiff's deposition, but the reference does not appear on that page. Nevertheless, because Mr. Hoegemann has admitted the fact, the Court includes it.

with Mr. Long's years of training and experience. *Id.* ¶ 20. Because he was alone, Mr. Long "was concerned, as he is always, about his safety and the safety of others." *Id.*

Mr. Hoegemann also showed Mr. Long a receipt for cigarettes at a nearby store. *Id.* ¶ 17. The receipt was time-stamped 9:01 p.m. *Id.*

At approximately 9:57 p.m., Officer Palma was able to reach and speak with Ms. Desena. Palma SMF ¶ 22. During this call, Officer Palma informed Ms. Desena that "the [P]laintiff had been involved in an incident earlier in the evening and that an arrest warrant for the [P]laintiff, for breach of peace, and possibly assault third degree was going to be placed on the [P]laintiff." State Defs.' SMF ¶ 28 (undisputed). Ms. Desena relayed to Officer Palma that Mr. Hoegemann was supposed to have been in counseling until 5:45 p.m. Call Five, ECF No. 59-4 at 33 (transcript of the first phone call between Ms. Desena and Officer Palma); *but see* Pl.'s Local Rule 56 Statement, ECF No. 63-1 ¶ 41 (Nov. 22, 2019) ("Pl.'s SMF – Palma") (alleging that Officer Palma "well knew that the [P]laintiff ran late and that in fact he could not have committed the crime at the time alleged in the 911 call").

Officer Palma spoke with Ms. Desena again at approximately 10:09 p.m. Palma SMF ¶ 25. Officer Palma did not request authorization from Ms. Desena for Mr. Hoegemann to be strip searched. *Id.* ¶¶ 23, 26. Ms. Desena also contacted her then-supervisor, Mr. Mirto, and informed him of the situation. State Defs.' SMF ¶ 29. Mr. Mirto did not have any personal contact with Mr. Hoegemann on December 3, 2014. *Id.* ¶ 40.

Sometime that evening, Mr. Long also contacted Mr. Mirto, who was also his then-supervisor, and reported 911 call made to the East Haven Police Department, and that he had also informed Ms. Desena about the situation. State Defs.' SMF ¶ 27. Mr. Mirto directed Mr. Long to leave. *Id.* Mr. Long recorded the events in his case notes. *Id.*

Mr. Long maintains that he did not "strip search the plaintiff as alleged in the complaint," State Defs.' SMF ¶ 21, but according to Mr. Hoegemann, Mr. Long inspected him for bruising and asked him to remove articles of clothing, Pl.'s Local Rule 56 Statement, ECF No. 64-1 ¶ 21 (Nov. 22, 2019) ("Pl.'s SMF – State Defs."); Ex. 1: Hoegemann Dep., ECF No. 58-3 at 46:22-24 (Sept. 27, 2019) ("Q. So what articles of clothing did you remove, if anything? A. Sweatshirt, T-shirt, tank top."). *See also* Pl.'s SMF – State Defs. ¶ 21 ("the phrase 'strip' search is not a term with any precise definition"); *id.* ¶ 24 (admitting "that there was no reference to a strip search in the recorded telephone calls"). Mr. Long also maintains he never asked Mr. Hoegemann to remove his T-shirt and undershirt. State Defs.' SMF ¶ 25; *compare id.* ¶ 26 (Officer Palma did not ask Mr. Long to "inspect [P]laintiff's upper torso to look for marks or scratches, as alleged by plaintiff in his deposition"), *with* Pl.'s SMF – State Defs. ¶ 26 (admitting the previous fact).

According to Mr. Hoegemann, the removal of those three articles of clothing—the sweatshirt, T-shirt, and tank top—is the "strip search" at issue in this lawsuit. Palma SMF ¶¶ 29, 30 (admitted). Mr. Hoegemann also alleges that this "strip search" occurred while Mr. Long was on the phone with Officer Palma. *Id.* ¶ 31.

<u>Subsequent Parole Actions</u>

On December 5, 2014, after a case conference, Mr. Mirto authorized and directed Ms. Desena to remand Mr. Hoegemann to custody. State Defs.' SMF ¶¶ 30, 42. Other parole officers who assisted with the remand were Parole Officers Long, Fortuna, and Thompson. *Id.* The remand was routine, and Mr. Hoegemann cooperated. *Id.* ¶ 31; *see also id.* ¶ 32 (noting that Conn. Gen. Stat. § 54-127 authorizes any parole officer to arrest and hold any parolee who is ordered back into actual custody without a written warrant).

Ms. Desena continued her investigation of the parole violation. *Id.* ¶ 33. Following Mr. Mirto's directions, she spoke with and obtained statements from the complainants in the assault that occurred on December 3, 2014: Glenn Evans, who was the victim, and Nazia Rahman, who was a witness and Mr. Hoegemann's ex-girlfriend. *Id.* ¶¶ 33, 43. Mr. Mirto witnessed and notarized one of the statements. *Id.* ¶ 43. Ms. Desena then prepared a Notice of Parole Violation Report. *Id.* ¶ 34.

Like Ms. Desena, Mr. Mirto was on-duty and present at the Waterbury District Parole Office on December 5, 2014, when Plaintiff was remanded. *Id.* ¶¶ 42, 45. At no time did Mr. Hoegemann complain to Mr. Mirto about an alleged strip search, improper search, or otherwise improper conduct by any PO. *Id.* 45. Mr. Hoegemann admits that he testified incorrectly at his deposition that Mr. Mirto was not present that day. *Compare* State Defs.' SMF ¶ 44, *with* Pl.'s SMF – State Defs. ¶ 44 (admitting the fact).

On December 9, 2014, the Notice of Parole Violation Report was served on Mr. Hoegemann, but he refused to sign it. State Defs.' SMF ¶ 35. The Notice charged him with violating condition (1), obey all laws; and condition (6), statutory release criteria, which stated that Mr. Hoegemann's release on parole "was no longer compatible with the welfare of society, and it was not reasonably probable that he could live and remain on parole without violating the law." *Id.* ¶ 36.

Ms. Desena then completed a Parole Violation Report, adding four addenda based on new information received before the parole revocation hearing. *Id.* ¶ 37.

On December 29, 2014, after reviewing the evidence submitted by the Department of Correction parole officers, regarding Mr. Hoegemann's conduct on December 3, the Chairperson

of the Board of Pardons and Paroles found that there was probable cause to issue a warrant for Mr. Hoegemann's re-imprisonment. *Id.* ¶ 55.

On March 15, 2016, after a parole revocation hearing, by a preponderance of the evidence, Mr. Hoegemann was found to have violated his conditions of Special Parole. *Id.* The parole revocation hearing had been continued "a number of times" at Mr. Hoegemann's request. *Id.* ¶ 59.

Mr. Mirto did not receive any inmate request or grievance concerning the conduct of any parole officer with regard to either December 3 or December 5, 2014. *Id.* ¶ 46. Grievances about staff misconduct "are taken quite seriously and investigated" by a dedicated staff person in the Parole and Community Service unit. *Id.* ¶ 47. Mr. Hoegemann admits he did not file any grievances concerning the events in this case, *id.* ¶ 49, but also admits he has used the same inmate administrative remedy system with regard to other issues, *id.* ¶ 51. Despite knowing about the administrative remedies process, Mr. Hoegemann never filed a complaint against any of the State Defendants. *Id.* ¶¶ 52-54.

<u>Subsequent Arrest Actions</u>

On January 15, 2015, Officer Palma signed an arrest warrant, which charged Mr. Hoegemann with breach of peace in the second degree and stalking in the second degree. Palma SMF ¶ 34. As part of his investigation, Officer Palma interviewed Mr. Hoegemann's ex-girlfriend, who was present during the December 3, 2014, assault at Robinson Aviation, had a child with Mr. Hoegemann, and had complained to the Hamden Police Department about alleged child custody issues and harassment by him. *Id.* ¶ 43 (undisputed). The warrant listed the incident date as December 2, 2014, instead of December 3, 2014. *Id.* The parties dispute whether

the incorrect date was a typographical error. *Compare* State Defs.' SMF ¶ 56, *with* Pl.'s SMF –
State Defs. ¶ 56.

On January 20, 2015, a prosecuting authority signed the arrest warrant, Palma SMF ¶ 35,
and a judge of the Connecticut Superior Court issued the warrant the next day, *id.* ¶ 36.

In February 2015, Mr. Hoegemann was arrested under this warrant. *Id.* ¶ 40.

On June 16, 2015, the charges against Mr. Hoegemann were dismissed because "the State
[was] not prepared and [Mr. Hoegemann] ha[d] filed a speedy trial motion." Ex. 4: Transcript of
Proceeding before Judge Maureen Keegan, Connecticut Superior Court, N23-N-CR-
1501551980-S, ECF No. 59-7 at 2:19-3:1 (June 16, 2015) ("Arrest Transcript").

### B.    Procedural History

On August 26, 2016, while incarcerated at the Corrigan-Radowski Correction Institution,
Mr. Hoegemann filed this lawsuit *pro se*, alleging various violations against Defendants, which
at that point included East Haven Police Officer Donato Palma and Connecticut Parole Officers
Jennifer Desena, James Long, Frank Mirto, Randy Lagana, Michael Cardona, Kate Fortuna, and
Sheila Thompson. Compl., ECF No. 1 (Aug. 26, 2016). On the same day, he filed a motion for
leave to proceed *in forma pauperis* and a motion to appoint counsel. Docket Entries, ECF Nos. 2,
3 (Aug. 26, 2016).

On August 31, 2016, the Court granted his motion for leave to proceed *in forma pauperis*
Order, ECF No. 7 (Aug. 31, 2016).

On February 2, 2017, the Court issued an Initial Review Order of Mr. Hoegemann's
Complaint under 28 U.S.C. § 1915A(b), which dismissed various claims and denied, without
prejudice, Mr. Hoegemann's motion to appoint counsel. Initial Review Order, ECF No. 8 at 26
(Feb. 2, 2017) ("IRO").

The Court allowed the following claims to proceed: the Fourteenth Amendment due process claims against Officers Lagana and Cardona in connection with the parole revocation hearings held in December 2014 and June 2015; the Fourth Amendment false arrest and unreasonable search and seizure claims against Officers Mirto, Desena, Long, Fortuna, Thompson, and Palma; and the Fourth Amendment privacy claim in connection with the search against Officers Desena, Long, and Palma. *Id.*

On February 21, 2017, Plaintiff moved for reconsideration of the Court's Initial Review Order with respect to the denial of his motion to appoint counsel. Mot. for Recons., ECF No. 10 (Feb. 21, 2017).

On March 3, 2017, the Court entered an order directing Mr. Hoegemann to identify a current mailing address for Officer Lagana, who had already retired and could not be served at the address for the Waterbury Parole Office. Order, ECF No. 13 at 1-2 (Mar. 3, 2017). The Court noted that Plaintiff's failure to do so within sixty days of the date of the order would result in the dismissal of all claims against defendant Lagana. *Id.* at 2.

On March 27, 2017, Plaintiff provided an updated mailing address for service of Officer Lagana. Notice, ECF No. 16 (Mar. 27, 2017).

On April 6, 2017, Officer Palma filed a motion to dismiss. Mot. to Dismiss, ECF No. 17 (Apr. 6, 2017).

On April 10, 2017, the Court denied without prejudice Plaintiff's motion for reconsideration of his motion to appoint counsel. Order, ECF No. 19 (Apr. 10, 2017).

On April 25, 2017, Plaintiff obtained counsel, who filed an appearance. Notice of Appearance, ECF No. 22 (Apr. 25, 2017).

On May 26, 2017, Defendants Cardona, Lagana, Fortuna, and Thompson filed motions to dismiss. Mot. to Dismiss – Cardona & Lagana, ECF No. 28 (May 26, 2017); Mot. to Dismiss – Fortuna & Thompson, ECF No. 29 (May 26, 2017).

On June 14, 2017, Plaintiff opposed the second set of motions to dismiss. Docket Entries, ECF Nos. 31, 32 (June 14, 2017).

On October 10, 2017, Plaintiff opposed Officer Palma's motion to dismiss. Mem. in Opp., ECF NO. 35 (Oct. 10, 2017).

On March 17, 2018, the Court issued an order on the pending motions to dismiss and ordered the Clerk of Court to terminate Lagana, Cardona, Fortuna, and Thompson as defendants in the case. Order, ECF No. 37 at 5 (Mar. 17, 2018). The Court denied Officer Palma's motion without prejudice to renewal. *Id.* Only the Fourth Amendment claims against the current Defendants remained.

On August 7, 2019, Desena, Long, and Mirto filed a motion for sanctions. Mot. for Sanctions, ECF No. 49 (Aug. 7, 2019).

On August 22, 2019, the Court held a telephonic status conference on the motion for sanctions. Minute Entry, ECF No. 51 (Aug. 22, 2019). On the same date, the Court denied the motion for sanctions without prejudice to renewal after the scheduled deposition date. Order, ECF No. 52 (Aug. 22, 2019).

On November 1, 2019, Officer Palma and the State Defendants each filed motions for summary judgment with accompanying statements of material fact and exhibits. State Defs.' Mot. for Summ. J., ECF No. 58 (Nov. 1, 2019) (containing the other supporting documents); Mot. for Summ. J., ECF No. 59 (Nov. 1, 2019) (same); *see also* State Defs.' Mem. in Supp. of

Mot. for Summ. J., ECF No. 58-1 (Nov. 1, 2019) ("State Defs.' Mem."); Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 59-1 (Nov. 1, 2019) ("Palma Mem.").

On November 22, 2019, Mr. Hoegemann opposed both motions for summary judgment. Br. in Opp. to Summ. J Mot. of Def. Donato Palma, ECF No. 63 (Nov. 22, 2019) ("Pl.'s Opp. – Palma"); Pl.'s SMF – Palma; Pl.'s Br. Concerning the Mot. for Summ. J. of the State Defs., ECF No. 64 (Nov. 22, 2019) ("Pl.'s Opp. – State Defs."); Pl.'s SMF – State Defs.

On December 2, 2019, Officer Palma replied. Palma's Reply to Pl.'s Obj. to Mot. for Summ. J., ECF No. 65 (Dec. 2, 2019) ("Palma's Reply").

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

Section 1983 provides a private right of action against state officials for constitutional violations:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations and citation omitted).

Mr. Hoegemann brings claims of false arrest and unreasonable search and seizure under the Fourth Amendment. The false arrests allegedly occurred when the State Defendants authorized or participated in remanding Mr. Hoegemann to custody on December 5, 2014, on charges that he violated the terms of his Special Parole; and when Officer Palma arrested Mr. Hoegemann on various charges in February 2015. The unreasonable search and seizure allegedly occurred when Officer Palma and Ms. Desena allegedly authorized Mr. Long's "strip search" of Mr. Hoegemann's person and search of his vehicle on December 3, 2014.

The Court addresses each of these claims in turn.

### A. The Alleged Failure to Exhaust Administrative Remedies

The State Defendants first raise the affirmative defense of failure to exhaust administrative remedies, arguing that it is undisputed that Mr. Hoegemann failed to exhaust administrative remedies, and thus all claims against them should be dismissed with prejudice. State Defs.' Mem. at 9-12. They emphasize the following undisputed facts: the remaining State

Defendants are all employees of the Connecticut Department of Correction; Mr. Hoegemann was aware of the administrative remedies available; Mr. Hoegemann did not file any grievances concerning the events in this case; and Mr. Hoegemann had used the same process with regard to other issues. *Id.* at 11-12. According to the State Defendants, Mr. Hoegemann is now barred from seeking administrative relief because the applicable process under Administrative Directive 9.6 requires him to file grievances within thirty calendar days of the event at issue, which here occurred on December 5, 2014. *Id.* at 12.

In response, Mr. Hoegemann argues that the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e, only requires the exhaustion of administrative remedies with respect to "prison conditions." Pl.'s Opp. – State Defs.' at 1. According to Mr. Hoegemann, while "prison conditions" include "actions taken against inmates by correction officials while they are incarcerated," there is no support for expanding this definition to include "actions of parole officers directed against inmates who are at large under parole supervision." *Id.* at 1-2.

The Court agrees that the Prison Litigation Reform Act only requires the exhaustion of administrative remedies with respect to "prison conditions," and Mr. Hoegemann's claims do not arise from prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *see also id.* at 529 ("It is at least equally plausible, however, that Congress inserted 'prison conditions' into the exhaustion provision simply to make it clear that

preincarceration claims fall outside § 1997e(a), for example, . . . a § 1983 claim against his arresting officer.").

Accordingly, the Court will not dismiss the claims against the State Defendants on this basis.

### B.     Fourth Amendment False Arrest Claims

Arrests supported by an officer's belief that there is probable cause are permitted under the Fourth Amendment. *See Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable."). When analyzing Section 1983 claims alleging false arrest, the Second Circuit "generally look[s] to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). "Under Connecticut law, false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (citing *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)) (internal quotation marks omitted). The plaintiff has the burden of proving an unlawful arrest when bringing a false arrest claim, and "a false arrest claim cannot lie when the challenged arrest was supported by probable cause." *Id.* at 203 (citing *Beinhorn v. Saraceno*, 23 Conn. App. 487, 491 (1990)).

Indeed, "[i]t is well-established that probable cause is a complete defense to claims of false imprisonment and false arrest." *Johnson v. Ford*, 496 F. Supp. 2d 209, 213 (D. Conn. 2007); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks

omitted)). An absence of probable cause is also an essential element for a malicious prosecution claim. See *Shattuck v. Town of Stratford*, 233 F. Supp. 2d 301, 306 (D. Conn. 2002) ("Under Connecticut state law, to establish malicious prosecution, the plaintiff must demonstrate . . . that the defendant acted without probable cause." (citing *Clark v. Town of Greenwich*, No. CV-00177986, 2002 WL 237854, at *3 (Conn. Super. Jan. 24, 2002))); *see also Jovanovic v. City of N.Y.*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) ("An element of any malicious prosecution claim is the absence of probable cause.").

### 1. Claim Against State Defendants – Parole Violation and Remand in December 2014

The first false arrest allegedly occurred when the State Defendants authorized or participated in remanding Mr. Hoegemann to custody on December 5, 2014, on charges that he violated the terms of his Special Parole.

The State Defendants first argue they were objectively reasonable in relying upon information from police and investigating further by obtaining statements from victims, which provided probable cause that Mr. Hoegemann had committed a parole violation. State Defs.' Mem. at 17-19. Next, the State Defendants argue that they had probable cause to charge Mr. Hoegemann with parole violations because Office Palma relayed he would be seeking an arrest warrant for criminal charges of assault, stalking, and breach of peace. *Id.* at 23. Additionally, the State Defendants had victim statements. *Id.* As a result, the State Defendants obtained approval for a remand under Conn. Gen. Stat. § 54-127, which allows the arrest and remand of a parolee without a written warrant. *Id.* The State Defendants argue that Mr. Hoegemann cannot prevail here because "[t]wo separate independent and autonomous neutral factfinders concluded that probable cause for [P]laintiff's remand and arrest existed here." *Id.* at 25. Finally, the State

Defendants submit they are entitled to qualified immunity on all claims, so summary judgment should enter in their favor. *Id.*

In response, Mr. Hoegemann has conceded that the State Defendants did not violate his Fourth Amendment rights. Pl.'s Opp. – State Defs. at 3 ("The [P]laintiff, therefore, is constrained to concede that the actions of the state defendants did not violate his Fourth Amendment rights.").

The Court agrees.

"Under both federal and Connecticut law, 'probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Zalaski v. City of Hartford*, 723 F.3d 382, 389-90 (2d Cir. 2013); *see also State v. James*, 261 Conn. 395, 415 (2002) ("Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . The probable cause determination is, simply, an analysis of probabilities.").

All of the information relied on by the State Defendants provided probable cause for his arrest, and undermined Mr. Hoegemann's false arrest claim. Here, the undisputed facts show that Officer Palma notified the State Defendants that he would be pursuing an arrest warrant for Mr. Hoegemann, charging him with breach of peace and possibly assault in the third degree. State Defs.' SMF ¶ 28. In addition, the State Defendants conducted their own investigation and obtained statements from the victim-complainants. *Id.* ¶¶ 33-34, 43 (undisputed). Finally, under Conn. Gen. Stat. § 54-127,

> The request of . . . the Board of Pardons and Paroles or its chairman shall be sufficient warrant to authorize . . . any officer authorized by

law to serve criminal process within this state, to return any convict or inmate on parole into actual custody; and any such officer . . . shall arrest and hold any parolee or inmate when so requested, without any written warrant.

Conn. Gen. Stat. § 54-127; *see also Petaway v. City of New Haven Police Dep't,* 541 F. Supp. 2d 504, 512 (D. Conn. Mar. 31, 2008) (finding, on a motion for summary judgment, that plaintiff failed to state a claim of false imprisonment because "he was in fact lawfully in the custody of the Department of Correction pursuant to the Remand to Custody Order for the parole violation").

Accordingly, the Court will grant summary judgment on the Fourth Amendment false arrest claim for the State Defendants.

### 2. Claim Against Officer Palma – Criminal Arrest in February 2015

The second false arrest allegedly occurred when Officer Palma arrested Mr. Hoegemann on charges of assault, stalking, and breach of peace in February 2015.

Officer Palma contends there is no genuine issue of material fact that there was probable cause to arrest Mr. Hoegemann. Def.'s Mem. at 12. First, Officer Palma contends that the incorrect date in the warrant (December 2, 2014, instead of December 3, 2014) was a scrivenor's error not necessary to a finding of probable cause, because all the records show that the events took place on December 3, 2014. *Id.* at 15-17. Despite Mr. Hoegemann's allegations that he had an alibi for the date and time of the reported criminal incident, Officer Palma emphasizes that it is undisputed that the alibi was nonexistent. *Id.* at 16.

Officer Palma contends that Mr. Long and Ms. Desena both confirmed with Officer Palma on December 3, 2014, that they could not provide an alibi for Mr. Hoegemann. *Id.* Officer Palma emphasizes the undisputed fact that the reported criminal incident took place before Mr. Long arrived to place the GPS monitoring device on Mr. Hoegemann, further diminishing the

strength of Mr. Hoegemann's claimed alibi. *Id.* at 17-19. Officer Palma also submits that he was not required to accept Mr. Hoegemann's representations that he was at his residence at the time of the criminal incident. *Id.* at 20. As a result, Officer Palma argues that there is no genuine issue of material fact that the date of the incident on the warrant was not necessary to finding probable cause. *Id.* at 20. Furthermore, Officer Palma argues that even if there is a genuine dispute of material fact, he is entitled to qualified immunity. *Id.* at 21-23.

In response, Mr. Hoegemann argues that Officer Palma knew he had a possible alibi defense for December 3, 2014, because "he knew that state parole officers were able to provide corroboration that the [P]laintiff was elsewhere than at the scene of the alleged assault at times not to [sic] far removed from the time of the alleged assault, although they could not corroborate [P]laintiff's claimed alibi for the precise time period of the alleged assault." Pl.'s Opp – Palma at 1. Instead of stating the correct date and thus disclosing Mr. Hoegemann's alleged alibi defense in the warrant application, Mr. Hoegemann submits that Officer Palma "lied about a critical fact which was not open to dispute." *Id.* at 1-3. Mr. Hoegemann contends that had Officer Palma provided the correct date, "[i]t is likely that the issuing judge, seeing that, would have declined to issue the warrant." *Id.* at 2. In Mr. Hoegemann's view, when a police officer "intentionally or recklessly withholds exculpatory information while making the complaint, resulting in an arrest and prosecution that otherwise would not have occurred, there is liability." *Id.* at 5 (citations omitted). Finally, Mr. Hoegemann notes that his criminal prosecution was "favorably terminated." *Id.*

In reply, Officer Palma emphasizes that it is undisputed that the Connecticut Parole Officers "did not and could not corroborate" Mr. Hoegemann's claimed alibi. Palma Reply at 2. Officer Palma also submits that Mr. Hoegemann has not provided specific citations that

demonstrate what parts of his alibi either parole officer allegedly corroborated. *Id.* at 5. Officer

Palma emphasizes that Mr. Hoegemann admitted two crucial facts: (1) Ms. Desena told Officer

Palma that Mr. Hoegemann was supposed to be in counseling until 5:45 p.m. on December 3,

2014, *compare* Palma SMF ¶ 41, *with* Pl.'s SMF – Palma ¶ 41; and (2) Mr. Long confirmed to

Officer Palma during their second telephone conversation around 9:40 p.m. that night that "he

could not account for Mr. Hoegemann's whereabouts at the time of the criminal incident,"

*compare* Palma SMF ¶ 42, *with* Pl.'s SMF – Palma ¶ 42. Palma Reply at 6-7. Accordingly,

Officer Palma notes that "[b]y Plaintiff's own admissions, the Parole Officers did not corroborate

his alibi, in whole or in part." Palma Reply at 7.

  The Court agrees.

  To challenge a finding of probable cause, "the plaintiff must make a 'substantial

preliminary showing' that the affiant knowingly and substantially, or with reckless disregard for

the truth, made a false statement in his affidavit and that the allegedly false statement was

'necessary to the finding of probable cause.'" *Golino v. City of New Haven*, 950 F.2d 864, 870-

71 (2d Cir. 1991) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

  In this case, because a judge of the Connecticut Superior Court, a "neutral magistrate,"

issued the arrest warrant on January 21, 2015, Palma SMF ¶ 36, there is thus "a presumption that

it was objectively reasonable for the officers to believe that there was probable cause." *See*

*Golino*, 950 F.2d at 870 (citing *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). The

undisputed facts are that the East Haven Police Department received a 911 call from a male

alleging he had been assaulted by Mr. Hoegemann, Palma's SMF ¶ 1, and Mr. Hoegemann did

not have an alibi because the parole officers, Ms. Desena and Mr. Long, "could not account for

Mr. Hoegemann's whereabouts at the time of the criminal incident," *id.* ¶¶ 41, 42.

Beyond his own allegations, Mr. Hoegemann has not shown that Officer Palma intentionally or recklessly wrote the incorrect date in the arrest warrant application. In addition, even if the typographical error was an intentional misstatement, Mr. Hoegemann has not shown that the incorrect date of December 2, 2014, instead of December 3, 2014, was material and "necessary to the finding of probable cause." *Golino*, 950 F.2d at 870*; see also Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[W]e conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

Even if there was a genuine dispute of material fact as to whether Officer Palma had probable cause to arrest Mr. Hoegemann, Officer Palma may be entitled to summary judgment on qualified immunity grounds. *See generally Gonzalez v. City of Schenactady,* 728 F.3d 149, 158 (2d Cir. 2013) (affirming district court's summary judgment ruling that, though defendants arrested plaintiff without probable cause and conducted an unreasonable search under the Fourth Amendment, defendants were nevertheless entitled to summary judgment on qualified immunity grounds).

"Qualified immunity protects federal and state officials from money damages and unnecessary and burdensome discovery or trial proceedings." *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)) (internal quotation marks omitted); *see also Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006) ("Qualified immunity shields police officers acting in their official capacity from suits for damages unless their actions violate clearly-established rights of which an objectively reasonable official would have known." (internal quotation marks omitted)). It "is an affirmative defense that the defendants have the

burden of raising in their answer and establishing at trial or on a motion for summary judgment."

*Coollick*, 699 F.3d at 219. "An officer conducting a search is entitled to qualified immunity

where clearly established law does not show that the search violated the Fourth Amendment."

*Pearson*, 555 U.S. at 243-44 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).

When a court analyzes the question of whether public officials are entitled to qualified

immunity, there are two issues that guide the inquiry. *See Zalaski v. City of Hartford*, 723 F.3d

382, 388-89 (2d Cir. 2013). First, the court considers whether "the facts show that the officer's

conduct violated plaintiff's constitutional rights." *Id*. Second, if the answer is no, "further inquiry

is unnecessary because [ ] there is no viable constitutional claim," but if the answer is yes, "or at

least not definitively no," the court may move on to the second question "was the right clearly

established at the time of defendant's actions?" *Id*.

Courts need not consider these two questions in order, and may consider the latter

question first, which may be "particularly appropriate where the former turns on difficult or

novel questions of constitutional or statutory interpretation, but it is nevertheless clear that the

challenged conduct was not objectively unreasonable in light of existing law." *Id*. (citing

*Pearson v. Callahan*, 555 U.S. 223 (2009)) (internal quotation marks omitted).

"In the Second Circuit, qualified immunity analysis consists of a three-step inquiry

examining whether there is an alleged violation of a constitutional right, whether the right was

clearly established at the time of the conduct, and—if the right was clearly established—whether

the defendants' actions were objectively reasonable." *Palmieri v. Kammerer*, 690 F.Supp.2d 34,

36 (D. Conn. 2010) (quoting *Harhay v. Town of Ellington Bd. Of Educ.*, 323 F.3d 206, 211 (2d

Cir. 2003). "[T]he clearly established right must be defined with specificity." *City of Escondido*

23

*v. Emmons*, 149 S. Ct. 500, 501 (2019) (finding that defining the clearly established as 'the right to be free of excessive force' was too general).

It is a "constitutional right[ ] of which a reasonable person would have known" and "reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal citations and quotations omitted). "[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam). "For law to be clearly established, it is not necessary to identify a case directly on point. But precedent must have spoken with sufficient clarify to have placed the constitutional question at issue beyond debate." *Mara v. Rilling*, 921 F.3d 48, 68 (2d Cir. 2019) (citing *Ashcroft v. al-Kidd*, 653 U.S. 731, 735 (2011)).

Even if a court determines that probable cause to arrest was lacking, "an officer will still be entitled to qualified immunity . . . if he can establish that there was 'arguable probable cause' to arrest." *Zalaski*, 723 F.3d at 390 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.*

The issue thus is whether Officer Palma reasonably believed that the date of the incident on the warrant application was necessary to find probable cause. There is undisputed evidence of not only the 911 call identifying Mr. Hoegemann by name, but also his lack of an alibi for the relevant time period and admitted history of harassing one of the victim-witnesses, his ex-girlfriend. Palma's SMF ¶¶ 10, 42, 43. Based on this undisputed evidence, Officer Palma had

arguable probable cause to arrest Mr. Hoegemann, even with the incorrect incident date listed on the warrant. *See Zalaski*, 723 F. 3d at 390 (dismissing false arrest and malicious prosecution claims because officers had arguable probable cause); *see also Mulligan v. Rioux*, 229 Conn. 716, 770 (1994) ("[W]ell-established principles instruct that qualified immunity is appropriate if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed.").

Because probable cause is a complete defense to claims of false arrest and malicious prosecution, the Court will dismiss the false arrest claim (and to the extent malicious prosecution is also asserted, that claim as well) against Officer Palma.

## C. Fourth Amendment Unreasonable Search and Seizure Claims

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.; *see Terry v. Ohio,* 392 U.S. 1, 9 (1968) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." (internal quotations and citation omitted)). "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Massey*, 461 F.3d 177, 178 (2d Cir. 2006) (internal quotation marks omitted). In conducting this balancing test, "[c]ourts must examine the totality of the circumstances surrounding the search, which includes the Plaintiff's status as a parolee." *Rivera v. Madan*, No. 10-CIV-4136 (PGG), 2013 WL 4860116, at *4 (S.D.N.Y. Sept. 12, 2013); *see also Samson v. California*, 547 U.S. 843, 852 (2006) ("The extent and reach of these conditions [to which parolees are subject] clearly

demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone.").

Because the Fourth Amendment balancing test requires a court to weigh the intrusion on an individual's privacy against the degree to which the intrusion is needed to promote "legitimate governmental interests," *see Massey*, 461 F.3d at 178, it is necessary to assess the state's "search regulations for parolees as they have been interpreted by state corrections officials and state courts" to determine whether a search of a parolee violated the Fourteenth Amendment, *United States v. Grimes*, 225 F.3d 254, 258-59 (2d Cir. 2000).

The Connecticut Supreme Court has found that "[t]he standard required to justify the search here by a probation officer[,] while properly less stringent than probable cause, . . . is that which may be found in the emerging and now rather stabilized concept of 'reasonable suspicion,' that is used in other contexts in and about the criminal law." *State v. Smith*, 207 Conn. 152, 174 (1988) (internal quotation marks omitted). The "reasonable suspicion standard requires no more than that the authority acting," such as a probation officer, "be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant a belief that a condition of probation has been or is being violated."[4] *Id.* at 691-92 (internal quotation marks omitted); *see also United States v. Perea,* 986 F.2d 633, 639-40 (2d Cir. 1993) (discussing the need to show a legitimate expectation of privacy in the location or object searched); *United States v. Wilson*, 699 F.3d 235, 245-46 (2d Cir. 2012) (applying the Fourth Amendment to the search of a vehicle).

---

[4] While *State v. Smith* discussed a probationer rather than a parolee, the Connecticut Supreme Court recognized similarities between probationers and parolees with respect to Fourth Amendment rights. *Smith*, 540 A.2d at 691-92. ("As with parolees, it may be crucial to the success of a probation program for a probation officer to have access to some information that a probationer may be unwilling to divulge and so a probation officer needs to be able to act in a manner that could not be tolerated if done by a policeman or other agent of the state with respect to an ordinary citizen under the [F]ourth [A]mendment." (internal quotation marks omitted)).

### 1. Claim against Officer Palma

Officer Palma first argues that there is no dispute he ever requested authorization for a strip search from Ms. Desena, nor did he request or direct Mr. Long to strip search Mr. Hoegemann's person or search his car on December 3, 2014. Palma's Mem. at 5-6. Although Officer Palma spoke with Mr. Long on the phone twice and "numerous questions were asked and information exchanged," Officer Palma argues that he "at no point" made any request that Mr. Hoegemann or his property be searched by Mr. Long. *Id.* at 7. Additionally, Officer Palma argues it was "simply impossible for [him] to have requested authorization for a strip search from Parole Officer Desena and to have that strip search[] executed, when Officer Palma did not actually speak with Parole Officer Desena until after the call during which the plaintiff maintains the strip search occurred." *Id.* at 8.

Next, Officer Palma argues that there is no dispute that a strip search ever occurred as a matter of law. *Id.* at 10. Even if Mr. Hoegemann was searched, Officer Palma submits that "it did not constitute a strip search," because the only articles of clothing removed were his sweatshirt, T-shirt, and a tank top. *Id.* at 11.

In response, Mr. Hoegemann "agrees that there is no evidence that Palma was involved in the search of his person which was conducted by other defendants in this case and makes no claim against Palma for that search." Pl.'s Opp. – Palma at 2.

Accordingly, the Court will grant summary judgment for Officer Palma on the Fourth Amendment unreasonable search and seizure claim.

### 2. Claim against State Defendants

The State Defendants argue that there is no strip search at issue here, and Mr. Hoegemann consented to searches as a condition of his Special Parole. State Defs.' Mem. at 13.

The State Defendants submit that Mr. Long conducted a pat-down prior to placing the GPS monitoring system and that Mr. Long "may have reached under [P]laintiff's jacket or sweatshirt and patted along the waist band to assure himself that plaintiff had no weapons." *Id.* at 15. Even if Mr. Hoegemann's sweatshirt, T-shirt, and undershirt were removed, the State Defendants submit that as a parolee, he had diminished expectations of privacy by virtue of his status alone. *Id.* As a result, the State Defendants argue that even if the Court were to credit Mr. Hoegemann's allegations, the search as described "is not an intrusive search of a parolee that is unreasonable under all the totality of circumstances of this case." *Id.* at 17.

In response, Mr. Hoegemann has conceded that the State Defendants did not violate his Fourth Amendment rights. Pl.'s Opp. – State Defs. at 3 ("The [P]laintiff, therefore, is constrained to concede that the actions of the state defendants did not violate his Fourth Amendment rights.").

The Court agrees.

In *Samson v. California*, the United States Supreme Court ("Supreme Court") held that parolees are "subject to special conditions," and the "extent and reach of these conditions clearly demonstrate that parolees like petitioner have severely diminished expectations of privacy by virtue of their status alone." 547 U.S. 843, 852 (2006). The Supreme Court emphasized that "a State has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses,'" *id.* at 853 (quoting *Pa. Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 (1998)), and that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment," *id.* (citation omitted). Because it is undisputed that Mr. Hoegemann had to and did consent to

searches as a condition of his parole, State Defs.' SMF ¶¶ 7, 8, and that when the alleged strip search occurred, he was serving his twelve-and-a-half-year sentence of Special Parole, *id.* ¶ 2, the Court will dismiss Mr. Hoegemann's Fourth Amendment unreasonable search and seizure claims. *See Sampson*, 547 U.S. at 857 ("[W]e conclude that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee.").

## IV.    CONCLUSION

For the foregoing reasons, both motions for summary judgment are **GRANTED**.

The Clerk of Court is directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of December, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE